## WILLIAM H. HAWKINS *et al. versus* WILLIAM H CHACE.

A bill of parcels in the usual form, written by a third person, by the direction of the vendor, is a sufficient note or memorandum of the contract, within the meaning of the statute of frauds, as against the vendor, although it do not state when the articles are to be delivered or when the price is to be paid, and be not signed at the bottom by the vendor.

In an action on such contract against the vendor, it should be left to the jury to find, not whether the memorandum was substantially conformable to the agreement which the vendor made with the plaintiff, and whether the vendor authorized the third person to write the contract substantially as it was written, but whether he authorized him to make and sign any memorandum in his behalf, or whether, after the memorandum was written, he adopted it and delivered it, or directed it to be delivered, as a memorandum of his agreement with the plaintiff.

CASE to recover damages for the non-performance of a contract. The action was tried in the Court of Common Pleas, before *Strong* J.

The plaintiffs produced in evidence a writing in the following words :

"W. H. Hawkins & Co.
Bought of William H. Chace,
20 Bbls. flour at 5½ . . . . . $ 110.
Rec'd pay't.
February 24, 1835."

This bill of parcels was not written nor signed by the defendant.

The plaintiffs then called one Willard as a witness, who testified, that he wrote the memorandum in question, at the request of the defendant, but whether he was requested to write the words contained in this memorandum, or in this particular form, he was unable to say.

The plaintiffs then offered to prove by Willard, what the contract was between the parties. This was objected to, but with the view of ascertaining what contract was made, so as to determine whether Willard had authority to write the paper, the judge admitted the testimony.

Willard then testified, that on the 24th of February, 1835, Hawkins asked the defendant if he had flour to sell, and the defendant replied, that he had twenty barrels to sell, at $ 5·50 per barrel ; that Hawkins said he would take it, and that he wanted a memorandum, or minute, or bill, (the witness could not tell which) ; that the defendant handed some paper to the witness and told him to put it down, or to write something ; that the witness then wrote the memorandum in question, and delivered it to Hawkins or to the defendant ; that Hawkins went away with the paper ; that the witness did not know whether the defendant read the writing, or heard it read, or in any way ascertained what was written.

The defendant contended, that the paper in question was not such a memorandum in writing signed by the party to be charged, as was required by the statute of frauds.

The jury were instructed, that if the memorandum was *substantially* such as the agreement which the defendant made with Hawkins, they might infer that Willard was authorized to make such memorandum ; that this was a question exclusively for their determination ; and that if they believed, that the defendant authorized Willard to write the contract substantially as this was written, then the contract was sufficient to satisfy the requisition of the statute of frauds.

The jury returned a verdict for the plaintiffs. The defendant excepted to the foregoing instructions.

*Coffin,* for the defendant.

*Warren, Battelle,* and *Williams,* for the plaintiffs, cited to the point, that the form of the memorandum was sufficient, *Penniman* v. *Hartshorn,* 13 Mass. R. 90 ; *Whitwell* v. *Wyer,* 11 Mass. R. 6 ; 4 Wheaton, 89, 94, note ; *Barstow* v. *Gray,* 3 Greenleaf, 409 ; *Bailey* v. *Ogden,* 3 Johns. R. 399 ; that it was signed, within the meaning of the statute, 2 Stark. Ev. 613 , *Knight* v. *Crockford,* 1 Esp. R. 190 ; *Saunderson* v. *Jackson,* 2 Bos. & Pul. 238 ; and that the act done by Wil

lard under the verbal authority, was binding on the defendant, *Ulen* v. *Kittredge*, 7 Mass R. 233; *Warring* v. *Williams*, 8 Pick. 326; *Shaw* v. *Nudd*, 8 Pick. 9; *Rucker* v. *Cammeyer*, 1 Esp. R. 105; 6 East, 307, note 1.

*Per Curiam.* The questions arising are : 1. Whether this bill of parcels is a sufficient memorandum of a contract, within the statute against frauds; 2. Whether it was signed by the witness, Willard, by the authority of the defendant, and delivered to the plaintiffs; and if so, then, 3. Whether there was evidence sufficient to prove that the contract was rescinded.

1. As to the sufficiency of the memorandum. It states that the plaintiffs had bought the flour of the defendant, the number of barrels, and the price ; but it does not state when the flour was to be delivered, or when the price was to be paid. But, in the absence of any other evidence, the contract is by law supposed to be performed, on request, in a reasonable time. The flour was to be delivered, and the price paid, upon demand. It is what is known among men of business as a cash transaction.

The contract is to be construed from its terms ; and is not to be varied by parol evidence. *Parkhurst* v. *Van Courtlandt*, 1 Johns. Cas. 279; *Brodie* v. *St. Paul*, 1 Ves. jun. 354; *Bailey* v. *Ogden*, 3 Johns. R. 399. It is expressed very nearly in the words of the memorandum which was adjudged sufficient in the case of *Saunderson* v. *Jackson*, 2 Bos. & Pul. 238. That was an action for not delivering a quantity of gin. When the plaintiffs delivered an order for the gin, the defendants delivered a bill of parcels to the plaintiff in these words : "London. Bought of Jackson & Hankin, distillers, No. 8, Oxford St., 1000 *gallons of gin*, 1 *in* 5 *gin*, 7*s*, £ 350." The words, &c. Italicized were written, and the rest of the memorandum was printed. In about a month afterwards the defendants wrote a letter to the plaintiff, wishing to know when they should send a part of the order to the plaintiff, and requesting a little time in the delivery of the remainder. It was held, that the bill of parcels, though not the contract itself, might amount to a note or memorandum of the contract, within the meaning of the statute. And although the names of the vendors were printed, yet the letter which referred to the order,

was signed by the defendants. Lord *Eldon* very pertinently remarked: " The single question is, whether if a man be in the habit of printing instead of writing his name, he may not be said to sign by his printed name as well as his written name." By delivering the paper in that form, he must be considered as adopting the printed part as if it had been written. The bill of parcels so delivered by the defendants in that case, was held to be a sufficient memorandum of the contract.

And we all think the bill of parcels in the case at bar, is to be considered as in itself a sufficient note or memorandum of the contract now sued, if it were properly signed and delivered by the party to be charged.

2. But upon this second point the Court are of opinion that, as the matter was left to the jury, it does not appear by the verdict, that the name of William H. Chace was written by Willard, by the authority of the defendant, or on his behalf. It is purely and exclusively a question of authority. Two things may be conceded, as well settled by authorities ; 1. that to constitute a signing within the meaning of the statute of frauds, it is not necessary that the signatures be placed at the bottom, but if the party to be charged has inserted his name in any part of the paper, in his own handwriting, it is sufficient to give it effect. *Saunderson* v. *Jackson*, 2 Bos. & Pul. 238 ; *Knight* v. *Crockford*, 2 Esp. R. 190 ; *Penniman* v. *Hartshorn*, 13 Mass. R. 87 ; and 2. that the authority of one person to sign for another, need not itself be proved by written evidence, but may be well proved by parol evidence. The latter is the common case of an auctioneer, who is deemed the agent of both parties, and whose memorandum therefore, entered in his own book, is taken to be a memorandum in writing, binding upon both parties, because by them respectively authorized.

But we know of no case in which such a signature has been deemed good, unless where it appears from the paper, that the name was introduced by the party to be charged, in his own handwriting, as in *Knight* v. *Crockford*, and *Penniman* v. *Hartshorn* ; or where the party making the memorandum, has stood in such relation as to give the effect to his act, to bind his principal or employer. We think there is no doubt that if

one is specially requested to sign or authenticate a paper for another, and he puts the name of his principal to any part of the paper, for that purpose, it would be good ; though we are not aware that any case cited is precisely to that point. But we think the whole evidence in the present case tends only to show, that the defendant requested Willard to draw up some paper for him to sign, and that some further act was contemplated, to give it any effect. It was not read to the defendant or in his hearing ; it was not delivered to the plaintiffs by him or by his direction ; and it does not appear, that he knew the contents. The words " received payment," on the bill, not signed, show that it was regarded as a blank to be filled, before it was to have effect ; and it was written either under an expectation that the transaction was to be closed, the money paid, and the receipt given then, or to be signed and operate as a receipt, when the money should be paid. But supposing the evidence admissible, the Court are of opinion, that instead of leaving it to the jury to find whether the memorandum of the 24th of February, was substantially such as the agreement which Chace made with Hawkins, and whether Chace authorized Willard to *write* the contract substantially as this was written, it should have been left to the jury to find whether Chace authorized Willard to make and sign any memorandum, in his behalf, or, after this memorandum was written, whether Chace adopted it and delivered it, or directed it to be delivered, as a memorandum of his agreement with the plaintiffs, and in either of the last cases to find for the plaintiffs upon this ground ; otherwise for the defendant.

*Verdict set aside and a new trial to be had in the Court of Common Pleas.*