Ben M. Katz, Appellant, v. Walter S. Anderson and
Helen S. Anderson, Appellees.

Gen. No. 64–18.

Third District.

May 19, 1964.

Stewart R. Winstein, of Rock Island, for appellant.

Robert M. Bell, of Rock Island, for appellees.

ROETH, J.

Plaintiff commenced a suit for specific performance to compel defendants to convey to him Lots 6, 7, 8, 9 and 10 in Block 198 in Park Addition to East Moline, pursuant to a written agreement to purchase. The following plat shows the location of the lots above:

The agreement to purchase is dated July 19, 1961, and is signed by the plaintiff and by Robert C. Austin (a realtor) as agent for defendant Walter Anderson. The record shows that the City of East Moline had an easement for street purposes on what is shown on the plat as 10th Place. The street had never been opened

and subsequent to the signing of the above agreement, defendants commenced negotiations with the City to officially vacate 10th Place. This vacation was accomplished on August 21, 1961. A controversy then arose between plaintiff and defendants as to whether or not the one half of 10th Place bordering on Lots 6, 7 and 8 inured to the benefit of these lots. Defendants own land on the east side of 10th Place across from Lots 6, 7 and 8. They claim it was the intention of the parties to exclude any portion of 10th Place and to retain title in defendants to the entire vacated portion of 10th Place.

After this suit was commenced the parties entered into a stipulation under which defendants conveyed the lots in question to plaintiff, reserving the

question of title to 10th Place for court hearing. On hearing the court found the issues for the defendants and entered an appropriate decree. This appeal by plaintiff followed.

Certain facts shown by the record are important. Defendant Walter Anderson originally owned some 20 lots in Park Addition. In July, 1956, defendant Anderson wrote William De Taeye of the real estate firm of Austin & De Taeye advising him that he wanted to sell these 20 lots and that he, De Taeye, had been recommended as a "young live wire in the real estate game." Defendant's letter described the lots by number and also advised that De Taeye was to have an exclusive listing and that defendant had employed an engineering firm to resubdivide the 20 lots into 9 lots. In the letter reference is made to 10th Place as follows:

> "Since lot 5 and 4 are owned by Joseph G. Carpentier who lives on lot 4 and whose neighbor to the west do not want the street, platted as 10th Place, to be used we can resubdivide with the idea of using the street and have the council vacate it."

While subsequent correspondence between defendant Anderson and his realtors reflects inquiry from time to time over the progress of the vacation of 10th Place, it was not until August 1961 (after the purchase agreement had been signed) that Anderson specifically indicated that he expected the title to the whole of 10th Place would revert to him and that plaintiff was not to have any title to any portion of it. The plaintiff testified that in his negotiations with the realtors nothing was said about the possibility of the City vacating 10th Place and that it was not until after the vacation had become an accomplished fact did he learn that defendants claimed title to the whole

408

of 10th Place. In this he is corroborated by the real estate agents of defendants. Prior to the sale of the 5 lots to plaintiff, Austin and De Taeye sold two other lots for defendant and the transaction was completed. As heretofore noted on July 19, 1961, plaintiff signed the agreement to purchase the 5 lots. This agreement to purchase is on a standard form. It does not contain any exclusion of any part of 10th Place in the event that street should be vacated. Under the signature of plaintiff appears the following:

> "The undersigned accepts this offer to purchase as outlined above hereof and agrees to make conveyance, and also agrees to recognize Austin-De Taeye Agency as the procuring cause of this sale and agrees to pay a 5% commission on the entire sales price.

> Accepted this 19th day of July, 1961.

> Owner/s/Robert C. Austin for Walter Anderson

> Phone ———"

Plaintiff paid $1,000 as earnest money and went into possession of the lots. Austin and De Taeye notified defendant Anderson of this action and on July 23, 1961, defendant Anderson wrote them in part as follows:

> "Congratulations to you both on the sale of the lots in Block 198. Now that these lots will have two duplexes on them the ice will be broken and the remaining lots will sell easier."

As already noted, 10th Place was vacated on August 21, 1961. Some time the latter part of August, 1961, plaintiff made a demand for deed from defendants. A deed was prepared and sent to defendants by their attorney. This deed described the property as it was described in the original purchase agreement. De-

409

fendants declined to sign a deed unless all portions of 10th Place, which had then been vacated, were expressly excluded from the description.

It appears to be conceded that the general rule is that upon vacation of 10th Place by the City, title to one half of the street would vest in the owner of lots 6, 7 and 8 and title to the other half of the street would vest in the owner of the lots on the west side of the street. Thus if plaintiff has a valid contract of sale for lots 6, 7 and 8 prior to the vacation of the street, he would be entitled to a conveyance from defendants of one half of the street. Defendants seek to avoid the effect of this general rule by insisting that there is no valid contract of sale. This contention is based upon (a) they did not sign the contract of sale and (b) that Austin and De Taeye were mere listing agents and had no authority to execute a contract of sale. Plaintiff counters with the contention that defendants ratified the execution of the contract of sale.

██ It is the general rule in Illinois that a real estate broker employed by the owner of real estate to find a purchaser does not have authority to execute a contract of sale which will bind the owner. Jones v. Howard, 234 Ill 404, 84 NE 1041; Leach v. Hazel, 398 Ill 33, 74 NE2d 797. This general rule, however, is subject to the equally well established doctrine of ratification which has been defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another, who at the time assumed to act as his agent in doing the act or making the contract without authority to do so. Reilly Tar & Chemical Corp. v. Lewis, 301 Ill App 459, 23 NE2d 243; Restatement of Law of Agency Vol 1, chap 4, sec 82, p 197.

It is reasonably clear from the record before us that sometime between July 19, 1961 (the date of the contract) and July 23, 1961 (the date of defendant Anderson's letter), and in some manner, defendant Anderson was advised that a contract of sale had been executed by Katz and by Austin on Anderson's behalf. To what extent the provisions of the contract were communicated to him does not appear. In his letter of July 23, 1961, Anderson used the language "Congratulations . . . on the *sale* of the lots, etc." (emphasis supplied) thereby indicating that he considered that a sale had been consummated. It may well be that at that time he intended, in the back of his mind, to exclude any portion of 10th Place should the street be subsequently vacated. However, this was the time to call the matter to the attention of his agents and make his intention known. At this time it was within his power to expressly exclude any portion of 10th Place and to refuse to be bound by any contract of sale that did not so provide.

We therefore hold that Anderson's letter of July 23, 1961, constituted a ratification of the contract of sale. There being no exclusion of any portion of 10th Place, plaintiff is entitled to a proportionate part of the vacated street. The decree of the Circuit Court of Rock Island County is reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

Reversed and remanded.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.